In the matter of ARTHUR D. COLYER, a solicitor of the court of chancery of New Jersey.

[Decided April 29th, 1915.]

Where an attorney falsely represented to his client that he had instituted divorce proceedings, and by means of such misrepresentations procured moneys which he claimed were for necessary costs, he should, in the absence of defence or explanation, be disbarred.

*Mr. Nelson B. Gaskill*, for the rule.

GRIFFIN, V. C.

Hilda R. Hummel filed her affidavit setting forth that she was married on June 15th, 1910, to William M. Hummel, and lived with him in New Jersey until the 1st day of January, 1912, when he deserted her. In November, 1913, Mrs. Hummel discussed the matter of divorce with a friend who was a member of the New York bar, and thereupon he introduced her to Arthur D. Colyer. She says she signed a number of papers for Mr. Colyer, which, she was informed, related to her divorce proceedings. On the 28th day of January, 1914, she received a letter from Mr. Colyer as follows:

"I learn that Mr. Peavey was talking to you over the phone this morning during my absence from the office. I have had no opportunity previously of informing Mr. Peavey that there were more papers for your signature and which required immediate attention. Also considerable costs in your suit have accrued and should be paid.

"I would be pleased, therefore, to have you meet me at the office tomorrow (Thursday) at say 2:30 P. M. if possible."

Upon receipt of this letter, as a result of a telephone communication between them, an appointment was fixed at the Hotel Astor on January 29th, 1914, at which time they met and she signed a number of papers, one of which she was informed was an order to publish. Colyer then informed her that costs amounting to $37 had been expended and paid, and that

it was necessary for her to pay him some money. She then paid him $100, taking his receipt for the same, in which receipt it was stated "ac't costs in *Hummel* v. *Hummel.*" She had been informed that the entire cost would be $150. Colyer informed her that the $37 had been incurred in making several trips to Trenton. At the same time he informed her that she would hear from him in the course of ten days or two weeks; that owing to the circumstances of the case, it would not be necessary to advertise for six weeks, as he had previously informed her; that he had found, when he was in Trenton, that it would only be necessary to advertise ten days. She did not hear from him again until the 18th of February, 1914, when he telephoned her that there were additional papers requiring her signature, and they again met at the Hotel Astor on February 18th, at nine o'clock, ·and she signed additional papers, one of which papers she said asked the judge to appoint a referee. At that time Colyer informed her that considerable additional expense had been incurred and it was necessary for her to make a further payment, and she paid him $25 more, taking a receipt for the same, "account costs in *Hummel* v. *Hummel.*" At this time she was informed by Colyer that the paper asking for the appointment of a referee was to be sent to Trenton, and would be sent back to a referee, either in Jersey City or Elizabeth, and that the matter would be disposed of and a decree entered in the latter part of the month. She says she has not seen or heard from Colyer since that time.

Annexed to the affidavit is a certificate of Robert H. McAdams, Esquire, clerk in chancery, certifying that he had examined the indices of his office from May 10th, 1912, to the date of the certificate, July 9th, 1914, and that he did not find any divorce suit of record brought by Hilda R. Hummel against William M. Hummel. Upon this affidavit and certificate an order was made, returnable before the chancellor at the chancery chambers in Jersey City, on Monday, the 27th day of July, 1914, requiring the said Colyer to show cause why he should not be adjudged guilty of malpractice as solicitor of this court in the matters aforesaid, and thereupon be debarred from further practice as a solicitor or counsel of this court, or be

suspended from further practice as a solicitor of this court, for such period of time as the chancellor should order, or to be otherwise disciplined and punished for his misconduct as might be deemed equitable and just.

Certified copies of the foregoing order to show cause and affidavit and order referring the matter to a vice-chancellor were served personally on Colyer. On the return day of the order to show cause the vice-chancellor fixed Thursday, the 22d day of October, 1914, at eleven o'clock in the forenoon, at the chancery chambers in Jersey City, as the time and place of hearing.

A certified copy of the order fixing the time and place of hearing, together with a notice of hearing, were served personally upon Colyer, on the 17th day of August, 1914. At the time and place appointed the hearing was had. Colyer did not appear, was not represented by counsel, nor did he in any manner communicate with the court. The case was proceeded with, and all the charges contained in the affidavit were proved to my satisfaction. It therefore appears that Mr. Colyer obtained from Mrs. Hummel $100 on the 29th day of January, 1914, on the representation that her suit for divorce had been instituted and considerable expense incurred; also that on February 18th, 1914, he obtained from her the further sum of $25 upon the representation that the suit was progressing; all of which representations were false and fraudulent. This brings the case directly with *In re Simpson, 82 Atl. Rep. 507,* where a solicitor was disbarred for obtaining money from a client under false pretences.

Mr. Colyer, although duly notified, did not appear either to deny the charges or offer any evidence in extenuation of his conduct. Under such circumstances, as his conduct, unexplained, discloses him to be one unfit to occupy such a position of trust as that of solicitor, he should be permanently debarred from further practice as such in this court, and a decree will be advised accordingly.

I am authorized to say that this matter was considered in conference, and that the chancellor and all the vice-chancellors concur in these views.